UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2011 AUG 12 PM 1:20
BY
DEPUTY CLERK

| | |
|---|---|
| Liberty Mutual Insurance Company ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Stephen W. Kimbell, in his capacity ) | 2:11-cv-204 |
| as the Vermont Commissioner ) | |
| of Banking, Insurance, Securities ) | |
| and Health Care Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Plaintiff Liberty Mutual Insurance Company ("Liberty Mutual"), through its undersigned attorneys, for its verified complaint against defendant Stephen W. Kimbell ("Defendant") in his capacity as the Vermont Commissioner of Banking, Insurance, Securities and Health Care Administration ("BISHCA"), states as follows:

### JURISDICTION AND VENUE

1. This is an action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. This case involves an actual controversy between the parties as to whether ERISA preempts a state statute and regulation requiring the disclosure to BISHCA of confidential health care information and records of medical treatment provided to private individuals in Vermont.

2. This Court has subject matter jurisdiction under both ERISA Section 502(e)(1), which provides the Court with exclusive jurisdiction to hear suits under Section 502(a)(3), and 28 U.S.C. § 1331.

1

3. Venue in this Court is proper under Section 502(e)(2) of ERISA because this is the District where the threatened violation of ERISA will take place and because the Defendant resides or may be found in this District.

## PARTIES

4. Plaintiff Liberty Mutual is an insurance company organized under the laws of the Commonwealth of Massachusetts. Liberty Mutual is a wholly owned subsidiary of Liberty Mutual Group Inc. Liberty Mutual's principal offices are located at 175 Berkeley Street, Boston, Massachusetts 02116. Liberty Mutual has employees and offices in Vermont and conducts business in Vermont.

5. Defendant Stephen W. Kimbell is Commissioner of BISHCA for the State of Vermont, and is named as Defendant in that capacity. Pursuant to Vermont statutory authority, BISHCA has promulgated Regulation H-2008-01 ("Regulation"), which generally requires that private health care data and records of individuals' medical treatment be provided to BISHCA. The Regulation is intended to implement the creation of a "unified health care data base" pursuant to 18 V.S.A. § 9410. The Regulation states that it was "issued pursuant to the authority vested in the Commissioner of" BISHCA.

## BACKGROUND AND FACTS

### A. Liberty Mutual's ERISA-Governed Employee Welfare Benefit Plan and Its Third Party Administrator

6. Approximately 54 years ago, Liberty Mutual established the Liberty Mutual Medical Plan (the "Plan") for the benefit of its employees. The Plan provides a broad range of medical care benefits to Liberty Mutual's employees and their beneficiaries. As of June 30,

2

2011, the Plan provides medical benefits to 84,711 persons throughout the United States, including 32,933 employees of Liberty Mutual Group Inc. and its subsidiaries, as well as employees' families and company retirees. Of these people, 137 are in Vermont, including all company employees in Vermont and their families. Liberty Mutual does not offer the right to participate in the Plan to a Vermont resident unless such individual is an employee of Liberty Mutual Group Inc., or one of its participating subsidiaries, a qualifying family member of such an employee, or an eligible company retiree.

7. The Plan is an employee welfare benefit plan governed by ERISA. See ERISA Section 3(1), codified at 29 U.S.C. § 1002(1). Liberty Mutual was at all times relevant hereto a "named fiduciary" and "plan administrator" of the Plan within the meaning of Section 3 of ERISA, 29 U.S.C. § 1002. Liberty Mutual Group Inc. is the "Plan Sponsor" within the meaning of Section 3 of ERISA, 29 U.S.C. § 1002.

8. The Plan provides medical benefits that are self-insured by Liberty Mutual Group Inc., meaning that Liberty Mutual Group Inc. pays all benefits provided under the Plan from its own general assets. Blue Cross Blue Shield of Massachusetts, Inc. ("BCBSMA" or the "TPA") is the Plan's third party administrator, and it administers the medical claims and associated confidential medical records of Plan participants and beneficiaries. BCBSMA is also in possession of, and on an ongoing basis continues to receive, confidential and private medical data and records involving Plan participants and beneficiaries.

## B. The Pertinent ERISA Provisions

9. ERISA is a comprehensive federal statute that regulates private employee benefit plans in order to provide protection to plan participants and beneficiaries. See Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 209 (2002); http://www.dol.gov/dol/topic/health-plans/erisa.htm (last visited August 11, 2011). One of the primary purposes of ERISA is to provide for the "uniform national treatment" of employee benefit plans. Arnold v. Lucks, 392 F.3d 512, 519 (2d Cir. 2004) (citing Yates Profit Sharing Plan v. Hendon, 124 S. Ct. 1330, 1331 (2004)).

10. "ERISA expressly preempts 'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' covered by the statute." Geller v. County Line Auto Sales, Inc., 86 F.3d 18, 22 (2d Cir. 1996) (citations omitted). "The express preemption provisions of ERISA are deliberately expansive.... [and] are among the broadest that can be found in the law." Id.

11. Section 404 of ERISA governs how fiduciaries of ERISA-governed plans are to behave. See generally ERISA § 504, codified at 29 U.S.C. § 1104. Section 404(a)(1)(A) of ERISA provides that a plan fiduciary, like Liberty Mutual, "shall discharge his duties with respect to a plan *solely in the interest of the participants and beneficiaries* and... *for the exclusive purpose* of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." ERISA § 404(a)(1)(A), codified as 29 U.S.C. § 1104(a)(1)(A) (emphasis added). Accordingly, ERISA forbids Liberty Mutual, a Plan fiduciary, from using the Plan for any purpose other than to provide benefits to Plan participants and beneficiaries.

4

12.  In addition, ERISA provides "detailed reporting and disclosure requirements." Massachusetts v. Morash, 490 U.S. 107, 118 (1999); see 29 U.S.C. §§ 1023-1030. Part 1 of Subtitle B of ERISA sets forth the reporting and disclosure duties of an administrator of a large employee welfare benefit plan such as the Plan. These requirements include publishing an annual report that is filed with the Secretary of Labor. See Section 103 of ERISA The annual report sets forth identifying information regarding the plan, the number of participants, the plan's funding arrangement and the plan's benefit arrangement. The annual report does not require any disclosure of the confidential, individualized health care and medical claims information sought by BISHCA. See ERISA Section 106, codified at 29 U.S.C. § 1026. Section 502(c)(2) of ERISA and the regulations thereunder set forth the penalties for failure to comply with ERISA's annual reporting requirements.

13.  ERISA makes clear that the United States Department of Labor is the entity Congress contemplated and authorized to collect and analyze data regarding ERISA health plans. Section 513 of ERISA expressly gives the Secretary of Labor "authori[ty] to undertake research and surveys and in connection therewith to collect, compile, analyze and publish data, information, and statistics relating to… welfare plans" such as the Plan. 29 U.S.C. § 1143(a). ERISA does not provide the States with authority to collect data from ERISA plans, but rather vests that authority in the Department of Labor.

14.  Despite its considerable breadth, ERISA preemption does not extend to state laws that regulate only insurance, banking, or securities. See ERISA § 514(b)(2)(A), codified at 29 U.S.C. § 1144(b)(2)(A). This exception to the general rule of ERISA preemption is known as the "Savings Clause." Under the Savings Clause, states are generally permitted to enact laws regulating only insurance. See id.

5

15. The "Deemer Clause" was also included in Section 514 of ERISA to ensure that the Savings Clause was not used as an end-run around ERISA's sweeping preemption provision. See ERISA § 514(b)(2)(B), codified at 29 U.S.C. § 1144(b)(2)(B). The Deemer Clause provides that a self-funded plan shall not "be deemed to be an insurance company… or to be engaged in the business of insurance… for purposes of any state law purporting to regulate" insurance businesses. Id. The Deemer Clause makes clear that a state law will not avoid ERISA preemption by merely deeming an employee benefit plan to be an insurer.

16. Nothing in ERISA permits a State to deem a self-insured employee welfare benefit plan or those providing administrative services to such a plan to be an insurance company so that it can require reporting of confidential, personal medical information to create its own proprietary health care database.

### C. BISHCA and the Regulation

17. BISHCA is a Vermont state agency which, according to its website, "provid[es] a single point of access for consumer complaint resolution, enforcement authority, and legislative contact on issues affecting financial and health care services in Vermont." http://www.bishca. state.vt.us/ (last visited Aug. 7, 2011). The Division of Health Care Administration, one of BISHCA's divisions, "regulates and monitors key sectors of Vermont's health care system to ensure that all Vermonters have access to health care that is affordable and meets accepted standards for quality." http://www.bishca.state.vt.us/ health-care/health-care-administration (last visited Aug. 9, 2011). The Defendant is the Commissioner of BISHCA.

18. The state of Vermont has enacted 18 V.S.A. § 9410 (the "Statute") in its effort to regulate heath care administration. The Statute calls for BISHCA to create a "unified health care

database," so that the Commissioner of BISHCA can carry out certain duties. See 18 V.S.A. § 9410(a)(1). These duties include: 1) determining the capacity and distribution of existing resources; 2) identifying health care needs and informing health care policy; 3) evaluating the effectiveness of intervention programs on improving patient outcomes; 4) comparing costs between various treatment settings and approaches; 5) providing information to consumers and purchasers of health care; and 6) improving the quality and affordability of patient health care and health care coverage. See 18 V.S.A. § 9410(a)(1)(A)-(F). These goals have nothing to do with regulating insurance but are, instead, directly aligned with the stated mission of BISHCA's Division of Health Care Administration. BISHCA is also granted enforcement responsibilities under the Statute.

19. Pursuant to the Statute, BISHCA promulgated Regulation H-2008-01 (the "Regulation") to implement the creation of a "unified health care data base." The Regulation states that "[t]he purpose of this rule is to set forth the requirements for the *submission of health care claims data, member eligibility data, and other information relating to health care* provided to Vermont residents or by Vermont health care providers and facilities by health insurers, managed care organizations, *third party administrators*, pharmacy benefit managers and others to [BISHCA]…and conditions for the use and dissemination of such claims data…consistent with the purposes of 18 V.S.A. § 9410." See Regulation Section 1 (emphasis added).

20. In furtherance of this purpose, the Regulation requires "Health Insurers" to "regularly submit *medical claims data, pharmacy claims data, member eligibility data, provider data, and other information relating to health care* provided to Vermont residents and health care provided by Vermont health care providers and facilities to both Vermont residents and non-

residents in specified electronic format to [BISHCA]." See Regulation Section 4(A) (emphasis added).

21.     The Regulation broadly defines "Health Insurer" to include any "third party administrator ... and any entity conducting administrative services for business or possessing claims data, eligibility data, provider files, and other information relating to health care provided to Vermont residents or by Vermont health care providers and facilities. The term may also include ... any administrator of an insured, self-insured, or publicly funded health care benefit plan offered by public and private entities." See Regulation § 3(X). By its terms, the definition includes plan administrators, like Liberty Mutual, and third party administrators, like BCBSMA.

22.     Accordingly, the Regulation requires Liberty Mutual and BCBSMA to annually report the Plan's private health care data and records of individuals' medical treatment to BISHCA.

### D.     The Issuance of the BISHCA Subpoena

23.     BISHCA has repeatedly attempted to apply the Statute and Regulation to Liberty Mutual's ERISA-governed Plan. BISHCA has recently made several demands that Liberty Mutual and BCBSMA report the Plan's medical claims data. The information sought includes Plan participants' and beneficiaries' name, gender, date of birth, city zip code, social security number, diagnosis and procedure code, type of bill paid, amount charged, the co-payment or coinsurance amount, and drug code, among other information. See Regulation, at Appendix C-1.

24.     In late May 2011, BCBSMA informed Liberty Mutual that BISHCA was being "very aggressive" in its efforts to enforce the claims data reporting Regulation and was pressuring BCBSMA to report the claims data for Liberty Mutual's Plan.

8

25. Both Liberty Mutual and BCBSMA have made numerous attempts to persuade BISHCA to abandon its efforts to apply the Regulation to the Plan. On June 6, 2011, Mary Connolly, the Vice President of Benefits at Liberty Mutual, and Liberty Mutual's Counsel Nancy L. Keating, spoke with Clifford Peterson, General Counsel for the Health Care Division of BISHCA, regarding the Vermont reporting rules and the issue of ERISA preemption. During that discussion, Mr. Peterson indicated that BISHCA would likely take enforcement action against BCBSMA if it failed to report the individual medical records and data of Plan participants and beneficiaries in the precise manner demanded by BISHCA. Liberty Mutual requested that BISHCA reconsider its insistence that the TPA report confidential health care information and participant medical records.

26. Subsequently, Jack Myers of BCBSMA communicated to Ms. Connolly that BISCHA "was about to take imminent action against" BCBSMA if it failed to submit the specific information, records and data demanded by BISCHA regarding Plan participants and beneficiaries.

27. On July 29, 2011, Ms. Connolly and Ms. Keating again spoke to BISHCA General Counsel Clifford Peterson and informed him that Liberty Mutual would continue to instruct BCBSMA not to report the claims data to BISHCA as it was inconsistent with the requirements of ERISA, and BISHCA had no right to compel a self-insured medical plan to disclose confidential health care information so BISHCA could create a health care database, because the Regulation was preempted by ERISA. Mr. Peterson responded that ERISA did not preempt the Vermont reporting rules.

28. Subsequently, on August 5, 2011, the Defendant served a subpoena on BCBSMA and Blue Cross Blue Shield of Massachusetts HMO Blue, Inc.[1] (the "Subpoena"). See Exhibit A.

29. The Subpoena demands that the TPA produce "Eligibility files for the following months of incurred service for 2011: April, May, June"; "Medical claim files for the following months of incurred service for 2011: January, April, May, June"; and "Pharmacy claim files for the following months of incurred service for 2011: April, May, June." The data demanded in the Subpoena includes personal identifying information regarding individual Plan participants' and beneficiaries' medical treatment, including Plan member name, gender, date of birth, city zip code, social security number, diagnosis and procedure code, type of bill paid, amount charged, co-payment or coinsurance amount, and drug code, among other items of information.

30. The Subpoena states that "*the files which precede the June filing period are overdue to the Department*, and the June filings are due by July 31, 2011." (emphasis added).

31. The Subpoena further states that "[p]ursuant to 8 V.S.A. § 13(b), a person who fails or refuses to produce papers or records... *may be assessed a penalty by the Commissioner of not more than $2,000.00 for each day* of noncompliance and proceeded against as provided in the Administrative Procedure act, and that person's *authority to do business may be suspended* for not more than six months." (emphasis added).

---

[1] Blue Cross Blue Shield of Massachusetts HMO Blue, Inc. does not provide services to the Plan, nor has the Plan provided medical records or data to that entity.

10

### E. The Controversy Between the Parties

32. Liberty Mutual, as the Plan administrator, has repeatedly resisted BISHCA's attempt to require the reporting or other disclosure of the confidential information, records, and data of Plan participants and beneficiaries, for three primary reasons.

33. First, the Statute and Regulation are preempted by ERISA. Specifically, the Statute and Regulation impose a new reporting regime on self-funded medical plans that requires reporting and disclosure different in kind and in scope from what is imposed under ERISA. As such, the Statute and Regulation are an attempt to intrude upon the uniform and exclusive regulation of employee benefit plans that Congress provided under ERISA. BISHCA has attempted to avoid ERISA's preemptive effect by defining "Health Insurers" to include plan administrators and third party administrators. However, this is nothing more than a legal fiction designed to allow BISHCA to improperly seek the confidential health care information, private medical records, and data of the Plan's participants and beneficiaries. Significantly, ERISA's Deemer Clause expressly rejects states' attempts to classify employee benefit plans as insurance companies in order to regulate them. BISHCA's attempt to treat Liberty Mutual and BCBSMA as "health insurers" is further belied by the fact that no Vermont resident without ties to Liberty Mutual Group Inc. and its subsidiaries can purchase insurance under the Plan.

34. Second, providing the Plan's claims data to BISHCA under the Statute and Regulation could constitute a violation of Liberty Mutual's ERISA fiduciary duties. The duties outlined in Section 404 of ERISA compel Liberty Mutual to safeguard against the type of detailed and intrusive reporting regime being imposed by BISHCA, particularly because BISHCA may release claims data to various third parties who request such data. See Regulation Section 9. Quite simply, the Plan may not be administered at the expense of the Plan and its

participants in order to develop a health care database so that the State of Vermont can best determine how health care should be provided to residents.

35. Third, the Plan owns the claims data that BISHCA seeks, and Liberty Mutual Group Inc. and its subsidiaries, as a national employer, has designed the Plan to meet its own competitive needs in the marketplace. Accordingly, BISHCA is not entitled to information related to the Plan design, including which claims the Plan does and does not cover or what a member's required coinsurance or copayments may be under the Plan, nor is it entitled to information relating to a participant's confidential medical claims information. BISHCA is similarly not entitled to compel the Plan's service providers (like BCBSMA) to report such information, irrespective of whether that individual is or is not a Vermont resident, since the service providers have no right to release the data to BISHCA without Liberty Mutual's consent.

## COUNT I
## ERISA Section 502(a)(3)

36. Plaintiff re-alleges and incorporates by reference all preceding allegations in this Complaint as though fully set forth in this Count I.

37. Section 502(a)(3) of ERISA provides that "[a] civil action may be brought… by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

38. There exists an actual controversy between Liberty Mutual and Defendant, which controversy can be resolved by a judgment of this Court.

12

39. Defendant subpoenaed the TPA demanding it turn over confidential health care information and private medical records and data of Liberty Mutual's Plan participants and beneficiaries, and threatening the TPA with substantial fines and loss of its ability to do business in Vermont if it does not comply with the subpoena. The TPA has indicated that absent preliminary injunctive relief from this Court, the TPA will be forced to, and will, comply with the Subpoena and turn over the medical records and data being demanded.

40. Liberty Mutual, as Plan administrator and named fiduciary, therefore sues under Section 502(a)(3) of ERISA seeking a declaratory judgment and to enjoin Defendant's attempt to force the TPA to produce the subpoenaed information because Defendant's actions, and the Regulation and 18 V.S.A. § 9410, each violate and are preempted by ERISA.

41. Plan participants and beneficiaries who are Vermont residents, as well as the Plan and its fiduciaries, will suffer irreparable harm if enforcement of the Subpoena is not preliminarily and permanently enjoined.

WHEREFORE, Liberty Mutual respectfully requests that this Court:

A. Declare that BISHCA's Regulation H-2008-01 and the Vermont health care database statute set forth in 18 V.S.A. § 9410 are preempted by ERISA to the extent they require the reporting, production, or disclosure of any confidential health care information or medical records or data relating to the Plan or its participants and beneficiaries;

B. Preliminarily and permanently enjoin the Defendant from attempting to obtain, from the TPA or any other source, any medical records or data relating to the Plan or its participants and beneficiaries;

13

C. Award Liberty Mutual its reasonable attorney's fees and costs incurred in this action pursuant to ERISA Section 502(g); and

D. Grant such further equitable relief as may be deemed appropriate.

Dated: August 12th, 2011

Respectfully submitted,

R. Jeffrey Behm, Esq.
Sheehey Furlong & Behm P.C.
30 Main Street
P.O. Box 66
Burlington, VT 05402

Nancy G. Ross *(pro hac vice admission pending)*
John Litwinski *(pro hac vice admission pending)*
Michael S. Yellin
McDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL 60606-5096
Telephone: 312.372.2000
Facsimile: 312.984.7700

# VERIFICATION

I, Mary Connolly, have reviewed the allegations made in this Verified Complaint and swear and affirm under penalties of perjury of the laws of the United States of America that they are true and correct to the best of my knowledge and belief.

_____
Mary Connolly
Vice President & Manager of Benefits
Liberty Mutual Insurance Company

Subscribed and sworn to
before me this 12 day of
August, 2011

_____
Notary Public



JEANNE M. MORSE
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
December 17, 2015