UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| Liberty Mutual Insurance Company,  )<br>    Plaintiff,  )<br>  )  Civil Case No. 2:11-cv-204<br>  v.  )<br>  )<br>Stephen W. Kimbell, in his official capacity  )<br>as the Vermont Commissioner of Banking,  )<br>Insurance, Securities and Health Care  )<br>Administration,  )<br>    Defendant.  ) | |

## MOTION TO DISMISS

Defendant Stephen W. Kimbell, in his official capacity as Commissioner of the Department of Banking, Insurance, Securities and Health Care Administration, by under-signed counsel, respectfully moves this Court pursuant to F.R.C.P. 12(b)(1) and (6) to dismiss the Complaint (Doc. 1) for lack of standing and for failure to state a cause of action, as follows:

Liberty Mutual Insurance Company ("Liberty Mutual") sues to enjoin the State from enforcing a subpoena served on Blue Cross/Blue Shield of Massachusetts, Inc. (BCBSMA), which serves as the third-party administrator for Liberty Mutual's medical care plan, arguing that ERISA preempts the state law under which the subpoena was issued. *See* Complaint ¶¶ 8, 39, 40. Liberty Mutual lacks standing to enjoin the subpoena served on BCBSMA and this Court therefore lacks subject matter jurisdiction. Independently, Liberty Mutual fails to state a claim because ERISA does not preempt the state law. For each of these reasons the Complaint should be dismissed.

## STANDARD OF REVIEW

Standing is an element of subject matter jurisdiction, and thus properly addressed under F.R.C.P. 12(b)(1). The burden is on the party invoking jurisdiction to prove standing. *Sharkey v. Ouarantillo*, 541 F.3d 75, 82 (2d Cir. 2008). When challenged on a motion to dismiss, the Court must accept all well-pled allegations as true, although the Court need not accept legal conclusions, even if presented as factual allegations. *Id.* at 82-83.

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), well pled allegations are assumed to be true. Conclusory allegations, however, are insufficient. *See, e.g.*, *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Additionally, the well-pled allegations must allege a plausible set of facts sufficient "to raise a right to relief above the speculative level," and must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949-50 (2009).

## ARGUMENT

**I. Liberty Mutual lacks standing and fails to present a justiciable case or controversy.**

This case should be dismissed because Liberty Mutual lacks standing and fails to present a justiciable case or controversy, under Article III of the Constitution. To demonstrate Article III standing, Liberty Mutual must establish three elements:

> "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations, quotation and alteration marks, and footnote omitted); *see also Jennifer Matthew Nursing and Rehab. Center v. U.S. Dept. of Health and Human Services*, 607 F.3d 951, 955 (2d Cir. 2010); *Vermont Public Interest Research Group v. U.S. Fish & Wildlife Service*, 247 F.Supp.2d 495, 506 (D.Vt. 2002). Liberty Mutual needs to establish all of these elements—injury, causation, and redressability—to have standing to bring this claim. As Liberty Mutual cannot establish either a concrete injury or causation, the Complaint should be dismissed for lack of subject matter jurisdiction. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (finding standing to be a predicate to the courts' exercise of subject matter jurisdiction).[1]

### a. Liberty Mutual cannot show a concrete injury.

Liberty Mutual cannot establish an injury in fact, since the Complaint is designed to quash a subpoena issued to BCBSMA, not Liberty Mutual. Liberty Mutual attempts to address this shortcoming by pleading that BCBSMA providing the Plan's claims data to the State under Vermont law "could constitute a violation of Liberty Mutual's ERISA fiduciary duties[;]"and that the Plan owns the claims data. *See* Complaint ¶¶ 34, 35.

First, Liberty Mutual cannot establish that Liberty Mutual would breach a fiduciary duty if BCBSMA were to comply with state law. In order for this argument to confer standing on Liberty Mutual, as opposed to BCBSMA (the entity served with the subpoena), Liberty Mutual would have to establish a fiduciary duty to prevent the third-party administrator from complying with state law and the subpoena. There is no such duty. Liberty Mutual cites to Section 404 of ERISA (29 U.S.C. §1104), Complaint ¶¶ 11, 34, but that section does no more than require the

---

[1] Since there is neither injury in fact nor causation, it necessarily follows that Liberty Mutual cannot meet the redressability requirement; however, the failure to meet any one of the three elements is fatal to jurisdiction.

3

administration of the plan for the benefit of the participants and beneficiaries (as opposed to the benefit of the administrators), and cannot be read to preclude compliance with state law. Section 404 requires plan fiduciaries to act as a "prudent man," §1104(a), which cannot plausibly be construed to mean instructing a third party administrator to disregard the law and a subpoena from the government.

Secondly, the ownership of the claims data does not somehow give rise to an injury. Liberty Mutual does not allege that the State will dispossess it of this data, reduce the value of the data (assuming it has any), or otherwise cause any actual, concrete harm to Liberty Mutual. Instead, Liberty Mutual presumes harm from having the State view its claims data, a presumption that does not confer standing. *VPIRG*, 247 F.Supp.2d at 506 (noting that plaintiff bears burden of establishing standing).

Although not pled in the Complaint, Liberty Mutual also asserts that it will suffer "reputational injury" if BCBSMA complies with the Vermont law. *See* Memorandum in Support of Motion for Preliminary Injunction (Doc. 2) at 14. Even if Liberty Mutual had some sort of legally protected interest in its reputation, it cannot establish that such injury "is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Faber v. Metro. Life Ins. Co.*, ___ F.3d ___, No. 09–4901–cv, 2011 WL 3375530, at *3 (2d Cir. Aug. 5, 2011) (citing *Lujan*, 504 U.S. at 560–61); *VPIRG*, 247 F.Supp.2d at 506. At best, Liberty Mutual alleges that someone might think worse of Liberty Mutual if BCBSMA complies with Vermont law. This alleged injury is neither concrete and particularized, nor actual and imminent; in fact, the claim is the epitome of conjectural. Nor can the claim that unnamed persons will think poorly of Liberty Mutual for failing to prevent BCBSMA from complying with a state law be considered "plausible on its face." *Twombly*, 550 U.S. at 570.

Finally, Liberty Mutual appears to be asserting harm to BCBSMA, in the form of sanctions threatened for noncompliance. *See* Complaint ¶¶ 31, 39. A "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights and interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). As one of the preconditions for asserting a third party's interests, a plaintiff must show "a hindrance to the possessor's ability to protect his own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (quotation omitted); *see also Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 174 (2d Cir. 2005). Clearly, BCBSMA has the ability to protect its own interests, and Liberty Mutual makes no effort to suggest otherwise.

### b. Liberty Mutual cannot show that any alleged harm has been caused by the State.

The Supreme Court held in *Lujan* that "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (quotation and alteration marks omitted). While Liberty Mutual has not alleged a particularized injury, as discussed above, the Complaint alleges that the plan cannot be administered at Liberty Mutual's expense for the benefit of the State, suggesting a potential that compliance could increase that expense. *See* Complaint ¶ 34. If this is Liberty Mutual's alleged harm, not only is such harm conjectural and speculative, but any alleged injury would occur from the (hypothetical) decision by BCBSMA—not Vermont— to increase charges to cover this regulatory burden. BCBSMA is a "third party not before the court" in this lawsuit, *Lujan*, 504 U.S. at 560, and it would be BCBSMA's independent action of changing its pricing that would create any injuries. Liberty Mutual therefore fails to meet the causation prong required to establish standing under *Lujan*. *Id.*

The allegations concerning harm through threatened fines and loss of the ability to do business in Vermont do not satisfy the requirement, either. As Liberty Mutual states it, those threats were made to BCBSMA and not Liberty Mutual. *See* Complaint ¶ 39. Because Liberty Mutual asserts injury arising from the state's actions against BCBSMA, Liberty Mutual cannot meet either the causation or redressability requirements for standing. *See Frank Krasner Enterprises, Ltd. v. Montgomery County*, 401 F.3d 230, 235 (4th Cir. 2005) (collecting cases). Moreover, Liberty Mutual admits that the harm is hypothetical, pleading that BCBSMA intends to comply with the law and subpoena unless this Court enjoins the State, thereby avoiding the threatened harm. *See* Complaint ¶ 39.

## II. ERISA does not preempt the Vermont statute.

Even if Liberty Mutual had standing, the Complaint should be dismissed because the sole legal theory upon which it is based, ERISA preemption, does not apply to 18 V.S.A. § 9410. As the Complaint notes, that statute requires the creation of a unified health care database, and the State has enacted regulations that require the submission of health care claims data in furtherance of the statutory mandate. *See* Complaint ¶¶ 18-21.

Despite Liberty Mutual's claims regarding the breadth of ERISA preemption, the Supreme Court "has emphasized that the expansive language of the provision is still subject to 'the starting presumption that Congress does not intend to supplant state law' and has warned 'that, unless congressional intent to preempt clearly appears, ERISA will not be deemed to supplant state law in areas traditionally regulated by the states.'" *Pharmaceutical Care Management Association v. Rowe*, 429 F.3d 294, 301 (1st Cir. 2005), quoting *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654, 661 (1995).

Health care is one such area traditionally regulated by the states: "nothing in the language of [ERISA] or the context of its passage indicates that Congress chose to displace general health care regulation, which historically has been a matter of local concern." *Travelers*, 514 U.S. at 661. The allegations of ERISA's sweeping preemption (*see e.g.* Complaint ¶ 10) are overstated.

Preemption depends on whether the state law "relates to" any employee benefit plan, for which the Court has established a two prong test: whether the law has a connection with or reference to such plan. *Rowe*, 429F.3d at 302, quoting *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324 (1997). Here, the state statute has neither a connection with nor a reference to an ERISA plan, and thus is not preempted.

**a. The statute does not have a connection with an ERISA plan.**

To determine if a state law has a connection with ERISA plans, the Court must analyze whether the law will impede the goal of the preemption clause, which is to avoid a multiplicity of regulation and permit nationally uniform administration of plans. *Rowe*, 429 F.3d at 302, quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001) and *Travelers*, 514 U.S. at 657.

The claims data reporting requirement in this case is similar to the disclosure requirements analyzed in *Rowe*, in that neither requirement restricts the freedom of plans to administer or structure the plans however they want. While a plan in Maine might have to make certain disclosures in that state under the law analyzed in *Rowe*, and make different disclosures in Vermont under 18 V.S.A. § 9410, the plans themselves can be administered and structured identically in both states and anywhere else. *Rowe*, 429 F.3d at 303.

In contrast, in *Egelhoff* the Court found that uniformity was impossible under a Washington law that automatically revoked a spouse's designation as plan beneficiary upon divorce. *Id.*, 532 U.S. at 148. The Court noted that plan administrators could not look to the

7

plan documents to determine a plan beneficiary, but would have to look to state laws to determine to whom to pay. *Id.* at 148-49.  Nothing about the claims data reporting requirement in Vermont affects how plans are structured or administered nationally or locally, and like the disclosure requirements in *Rowe*, the mere reporting requirement does not preclude nationally uniformity as to plans.

### b. The statute does not have a reference to an ERISA plan.

The Supreme Court has determined that a state law has reference to ERISA plans, and thus is preempted, where the law "acts immediately and exclusively upon ERISA plans... or where the existence of ERISA plans is essential to the law's operation." *Dillingham*, 429 U.S. at 325.  By its terms, the regulation enacted under the Vermont statute applies to "health insurers, managed care organizations, third party administrators, pharmacy benefit managers and others[,]" and is not exclusive to ERISA plans.  *See* Complaint ¶ 19.  Accordingly, the law can be preempted only if the existence of ERISA plans were essential to the law's operation.

The Vermont law is general in application, and does not depend on the existence of ERISA plans for its operation.  Like the law at issue in *Rowe*, deleting any terms applicable to ERISA plans (here, "third party administrators") would not render the law inoperable.  *Rowe*, 429 F.3d at 304.  While the inclusion of ERISA plans is desirable, to make the database complete, it is not necessary to make the law operable, and thus does not trigger preemption under the "reference to" prong.  *Id.* at 303, quoting *Dillingham*, 519 U.S. at 325.

Instead, the Vermont law is of general applicability, addressed to a host of entities that control health care claims data, including third party administrators like BCBSMA.  *See* Complaint ¶ 19, quoting the regulation.  In *DeBuono v. NYSA-ILA Medical & Clinical Serv. Fund*, 520 U.S. 806 (1997), the Court considered an ERISA preemption challenge to a gross

receipts tax on medical facilities, including those operated with ERISA funds.  The Court rejected the preemption claim, as the contested law was "one of 'myriad state laws' of general applicability that impose some burdens on the administration of ERISA plans but nevertheless do not "relate to' them within the meaning of the governing statute."  *Id.* at 815-16, citing *Travelers*, 514 U.S. at 668, and *Dillingham*, 519 U.S. at 333-34.

### c.  No other preemption applies.

While not a part of the standard ERISA preemption analysis, Liberty Mutual has pled the reporting requirements found within ERISA, suggesting some other preemption claim.  *See* Complaint ¶ 12.  "There are three ways in which federal law may preempt state law:  express preemption, implied or field preemption, and conflict preemption."  *State of New York v. West Side Corp.*, ___ F.Supp.2d ___, No. 07-cv-4231, 2011 WL 2342752 *3 (E.D.N.Y. June 3, 2011).  As discussed above, express preemption does not apply to this state law.

Implied preemption only applies where Congress has so thoroughly pervaded a field as to suggest that any state law operating in that field was intended to be preempted.  *Id.* at *3, quoting *Bedford Affiliates v. Sills*, 156 F.3d 416, 426 (2d Cir. 1998).  Implied preemption depends on an inference regarding Congress' preemptive intent, and thus is incompatible with express preemption, which relies on interpreting Congress' intent from the plain wording of an expressed preemption clause.  *See id.* at *3, quoting *Chamber of Commerce of the United States v. Whiting*, 563 U.S. ___, 131 S.Ct. 1968, 1977 (2011).  Since Congress expressed its intent regarding the limits of ERISA preemption,[2] it follows that no inference of preemptive intent can be found from statutory language that has been found expressly not to be intended to preempt a state law.

---

[2] As declared by the Supreme Court.  *See e.g. Travelers*, 514 U.S. at 654, 661-62.

9

Conflict preemption applies when, and only to the extent that, a state law actually conflicts with a federal statute, or "'where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at *3, quoting *Bedford*, 156 F.3d at 426 (internal quotations omitted).  The Vermont claims data reporting statute does not expressly conflict with the reporting requirements cited in the Complaint, as there is nothing incompatible about the requirements.  Similarly, the Vermont law is not an obstacle to ERISA's reporting requirement, as the state law does nothing to prevent compliance with the federal reporting requirement.  Liberty Mutual's argument appears to be that states cannot also have reporting requirements because the federal law has reporting requirements.  However, there is nothing incompatible about those requirements, and thus no conflict preemption.

Wherefore, Defendant respectfully requests the Court dismiss the Complaint with prejudice, and for such other and further relief as deemed appropriate.

Dated at Montpelier, Vermont this 15th day of September, 2011.

        STATE OF VERMONT

        WILLIAM H. SORRELL
        ATTORNEY GENERAL

By:   /s/ David Cassetty
      David Cassetty
      Assistant Attorney General
      Office of the Attorney General
      109 State Street
      Montpelier, VT 05609-1001
      (802) 828-1101
      dcassetty@atg.state.vt.us

      Clifford Peterson
      General Counsel
      Department of Banking, Insurance,
      Securities and Health Care Administration
      89 Main Street
      Montpelier, VT 056092
      (802) 828-3301
      cliff.peterson@state.vt.us

      Counsel for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of September, 2011, I electronically filed Defendant's Motion to Dismiss with the Clerk of the Court using the CM/ECF system.

        STATE OF VERMONT

        WILLIAM H. SORRELL
        ATTORNEY GENERAL

By:   /s/ David Cassetty
       David R. Cassetty
       Assistant Attorney General
       Office of the Attorney General
       109 State Street
       Montpelier, VT 05609-1001
       (802) 828-1101
       dcassetty@atg.state.vt.us

       Counsel for Defendant