UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

LIBERTY MUTUAL INSURANCE COMPANY,      :
                                       :
          Plaintiff,                   :
                                       :
     v.                                :     Case No. 2:11-cv-204
                                       :
STEPHEN W. KIMBELL, in his capacity    :
as the Vermont Commissioner of         :
Banking, Insurance, Securities and     :
Health Care Administration,            :
                                       :
          Defendant.                   :

**OPINION and ORDER**

Plaintiff Liberty Mutual Insurance Company ("Liberty

Mutual") seeks a declaration that Section 502(a) of the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §

1132(a), preempts Vermont's statute and regulation requiring it

to provide information for the State's health care database, *see*

Vt. Stat. Ann. tit. 18, § 9410 (2000 & Supp. 2011); Reg. H-2008-

01, and to enjoin the enforcement of a subpoena directing the

production of eligibility, medical claims and pharmacy claims

files.  Defendant Stephen W. Kimbell, in his official capacity as

Commissioner of the Vermont Department of Banking, Insurance,

Securities and Health Care Administration ("BISHCA" or

"Department"),[1] moved to dismiss the complaint for lack of

standing and for failure to state a claim upon which relief can

be granted.  *See* Fed. R. Civ. P. 12(b)(1), 12(b)(6).  Liberty

---

[1]  BISHCA has been renamed, and is now the Department of
Financial Regulation ("DFR").

Mutual moved for summary judgment.  *See* Fed. R. Civ. P. 56(a).
At oral argument on the motions, with the parties' concurrence,
the Court converted the Department's Rule 12(b)(6) motion to one
for summary judgment under Rule 56(a), in order to consider
materials submitted outside the pleadings.  *See* Fed. R. Civ. P.
12(d).  For the reasons that follow, the Court concludes that
Liberty Mutual has standing to bring this suit for declaratory
and injunctive relief, but that the Department's motion for
summary judgment is granted because ERISA does not preempt
section 9410.  Accordingly, the Department's Motion to Dismiss,
ECF No. 15, is **granted in part and denied in part**.  The motion is
denied with respect to standing and granted with respect to ERISA
preemption.  Liberty Mutual's Motion for Summary Judgment, ECF
No. 35, is **denied**.  Liberty Mutual's Motion for Leave to Respond
to Defendant's Notice of Supplemental Authority, ECF No. 52, is
**granted**.

## Background[2]

Liberty Mutual is an insurance company organized under the
laws of the Commonwealth of Massachusetts.  It is a wholly owned
subsidiary of Liberty Mutual Group Inc.  Liberty Mutual has
employees and offices in Vermont and conducts business within the
state.

Liberty Mutual established the Liberty Mutual Medical Plan

---

[2]  The facts set forth in this section are undisputed.

2

("Plan") for the benefit of company employees.  As of June 30, 2011, the Plan provided medical benefits to 84,711 persons throughout the United States, including 32,933 employees of Liberty Mutual Group, Inc. and its subsidiaries, plus employees' families and company retirees.  As of that date, 137 plan participants or beneficiaries resided in Vermont.

As an employee welfare benefit plan, the Plan is governed by ERISA.  Liberty Mutual is the "named fiduciary" and "plan administrator" of the Plan within the meaning of Section 3 of ERISA, 29 U.S.C. § 1002.  The Plan is self-funded, or self-insured, meaning that Liberty Mutual Group, Inc. pays all benefits provided under the Plan from its own general assets.  The Plan contracts with Blue Cross Blue Shield of Massachusetts, Inc. ("BCBSMA") as the third-party administrator ("TPA") of the Plan.  As such, BCBSMA processes medical claims for Plan participants, receives participants' confidential medical records and generates claims data.  The Administrative Services Agreement ("Agreement") between BCBSMA and Liberty Mutual provides that any information Liberty Mutual makes available must be used solely for the purpose of administering BCBSMA's health care plans, and that its auditors must have procedures in place to guard against unauthorized disclosure of health care information.  *See* Agreement §§5, 6; ECF No. 22-4.

In Liberty Mutual's summary plan description ("SPD"),

3

provided to participants, Liberty Mutual informs participants that information they provide in connection with screening for risk factors will be kept strictly confidential, and that if they participate in genetic testing the test is confidential. *See* SPD "Well-Baby Programs" at B-28, "Personalized Medicine Program" at B-46; ECF No. 22-5.

Liberty Mutual's Plan specifies that it "has been established for the exclusive benefit of Participants . . . ." *See* Plan § 9.1; ECF No. 22-2.  It also provides that the Plan "shall comply with all other state and federal law to the extent not preempted by ERISA and to the extent such laws require compliance by the Plan."  *Id.* § 9.9.

Liberty Mutual's Plan is subject to federal reporting and disclosure requirements set forth in ERISA Sections 101 through 110 and associated regulations.  *See* 29 U.S.C. §§ 1021-1031; 29 C.F.R. §§2520.101-1 to 2520.107-1.  In addition, Section 513 of ERISA authorizes the Secretary of Labor to "undertake research and surveys and in connection therewith to collect, compile, analyze and publish data, information, and statistics relating to employee benefit plans . . . ."  29 U.S.C. § 1143(a).

Vermont has enacted legislation to create a unified health care database.  *See* Vt. Stat. Ann. tit. 18, § 9410 (2000 & Supp. 2011).  The database, established and maintained by the Department, is designed to enable the Department to determine the

4

capacity of existing resources, identify health care needs,
evaluate effectiveness, compare costs, provide information to
consumers and purchasers of health care, and improve the quality
and affordability of patient health care and health care
coverage.  *See* § 9410(a)(1)(A)-(F).

Section 9410 requires "health insurers," which includes "any
. . . entity with claims data . . . and other information
relating to health care provided to Vermont resident[s]," §
9410(j)(1)(B), to "file reports, data, schedules, statistics, or
other information determined by [the Department] to be necessary
to carry out the purposes of" the statute.  § 9410(c).  The
statute mandates the adoption of rules to carry out its purposes,
§ 9410(a)(2)(D), and provides for administrative penalties for
knowing and for willful failure to comply with the statute or
rules.  § 9410(g).

Pursuant to the statute, the Department promulgated
Regulation H-2008-01 to implement the creation of the unified
health care database.  It states:

> The purpose of this rule is to set forth the requirements
> for the submission of health care claims data, member
> eligibility data, and other information relating to health
> care provided to Vermont residents . . . by health insurers,
> . . . . third party administrators, . . . and others to the
> [DFR] and conditions for the use and dissemination of such
> claims data, all as required by and consistent with the
> purposes of . . . § 9410.

Reg. H-2008-01, § 1.  The Vermont Healthcare Claims Uniform
Reporting and Evaluation System ("VHCURES") is the Department's

system for the collection, management and reporting of this data.

*See id.* § 3Ar.

The regulation tracks the statute in defining "health

insurer" to include entities defined in § 9410(j)(1), including

> any third party administrator . . . and any entity . .
> . possessing claims data, eligibility data, provider
> files, and other information relating to health care
> provided to Vermont residents or by Vermont health care
> providers and facilities.  The term may also include,
> to the extent permitted under federal law, any
> administrator of an insured, self-insured, or publicly
> funded health care benefit plan offered by public and
> private entities.

*Id.* § 3X.

The parties do not dispute that Liberty Mutual and BCBSMA

fall within the regulation's definition of "health insurer."

The regulation requires health insurers to register with the

Department, and to identify whether health care claims are being

paid for members who are Vermont residents or for non-residents

who are receiving covered services from Vermont health care

providers or facilities.  *See id.* § 4A.  Health insurers must

"regularly submit medical claims data, pharmacy claims data,

member eligibility data, provider data, and other information

relating to health care provided to Vermont residents and health

care provided by Vermont health care providers and facilities to

both Vermont residents and non-residents in specified electronic

format."  *Id.* § 4D.  The regulation sets a threshold for

"mandated reporters," those health insurers with two hundred or

more enrolled or covered members.  *Id.* § 3Ab.  All other health
insurers are considered "voluntary reporters."  *Id.* § 3As.
Voluntary reporters may, but are not required to, participate in
VHCURES.  *See id.* § 4E.

The statute and regulation include various measures designed
to protect confidential material.  *See* §§ 9410(a)(2)(D) ("The
rules shall permit health insurers to use security measures
designed to allow subscribers access to price and other
information without disclosing trade secrets to individuals and
entities who are not subscribers."); (e) ("Records or information
protected by the provisions of the physician-patient privilege .
. . or otherwise required by law to be held confidential, shall
be filed in manner that does not disclose the identity of the
protected person."); (f) (The commissioner shall adopt a
confidentiality code to ensure that information obtained under
this section is handled in an ethical manner."); (g) ("[A]ny
person who knowingly fails to comply with the confidentiality
requirements of this section or confidentiality rules adopted
pursuant to this section and uses, sells, or transfers the data
or information for commercial advantage, pecuniary gain, personal
gain, or malicious harm shall be subject to an administrative
penalty of not more than $50,000.00 per violation."); (h)(2)(D)
("Notwithstanding [the Health Insurance Portability and
Accountability Act ("HIPAA")] or any other provision of law, the

comprehensive health care information system shall not publicly disclose any data that contains direct personal identifiers. . . ."); *see also* Reg. H-2008-01 §§ 5(A)(5) (setting forth code and encryption requirements); 7(A)(5) ("Files submitted shall not contain direct personal identifiers."); 8(A) (classifying data elements as "unrestricted" and available for general use and public release; "restricted" and available for limited approved research uses; or "unavailable").

Subject to these strictures and the requirements of HIPAA, the statute and regulation allow the Department to make the data it collects "available as a resource for insurers, employers, providers, purchasers of health care, and state agencies to continuously review health care utilization, expenditures, and performance in Vermont." § 9410(h)(3)(B).

On August 5, 2011, the Department issued a subpoena to BCBSMA seeking eligibility, medical claims and pharmacy claims files for certain months. Liberty Mutual instructed BCBSMA not to report the information for Plan participants and beneficiaries, and filed this action seeking declaratory and injunctive relief. BCBSMA has complied with the subpoena with the exception of providing the data collected on the Vermont participants in Liberty Mutual's Plan, and has indicated that it will comply fully with the subpoena absent injunctive relief from this Court. *See* Verified Compl. ¶ 39, ECF No. 1.

8

The subpoena served on BCBSMA states that

> [p]ursuant to 8 V.S.A. § 13(b), a person who fails or
> refuses to produce papers or records for examination
> before the Commissioner, upon properly being ordered to
> do so, may be assessed an administrative penalty of the
> Commissioner of not more that $2,000.00 for each day of
> noncompliance and proceeded against as provided in the
> Administrative Procedure Act, and that person's
> authority to do business may be suspended for not more
> than six months.

Subpoena, ECF No. 1-1.

## Discussion

## I.   Standing

The Department challenges Liberty Mutual's Article III
standing.  Standing, a "threshold question in every federal case,
determin[es] the power of the court to entertain the suit."
*Warth v. Seldin*, 422 U.S. 490, 498 (1975).  The "irreducible
constitutional minimum of standing" requires a plaintiff to show
(1) that it has "suffered an injury in fact—an invasion of a
legally protected interest which is (a) concrete and
particularized, and (b) actual or imminent, not conjectural or
hypothetical; [(2)] a causal connection between the injury and
the conduct complained of; [and (3) that it is] likely, as
opposed to merely speculative, that the injury will be redressed
by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504
U.S. 555, 560 (1992) (citations and internal quotation marks
omitted); *accord Carver v. City of New York*, 621 F.3d 221, 225
(2d Cir. 2010).

9

Because Liberty Mutual's standing is challenged by a Rule 12(b)(1) motion to dismiss, the Court accepts as true all material allegations of the complaint, and construes the complaint in Liberty Mutual's favor. *Id.* The Court also accepts the sworn declaration of Mary Connolly, ECF No. 22-1, with its attached exhibits, including copies of the Plan, the Summary Plan Description, and the Administrative Services Agreement between Liberty Mutual and BCBSMA. *See Warth*, 422 U.S. at 501.

The Department contends that Liberty Mutual cannot establish the first or second elements of Article III standing:  concrete injury or causal connection.  The Department points out that the subpoena is directed toward BCBSMA, not Liberty Mutual, and that it does not seek data from Liberty Mutual.  Therefore, it reasons, Liberty Mutual can suffer no injury if BCBSMA complies with the subpoena.  Liberty Mutual responds that it has standing because it is the Plan fiduciary, and providing the data to the Department, or allowing the data to be provided, could constitute a violation of its fiduciary duties.  It also asserts that the Plan owns the data demanded by the Department. *See* Verified Compl. ¶ 35.

Liberty Mutual is the Plan Administrator, and has control over the operation and administration of the Plan.  Plan §§ 7.1-7.2.  It is a fiduciary with respect to the Plan, given that it "exercises . . . discretionary authority or discretionary control

10

respecting management" of the Plan.  29 U.S.C. § 1002(21)(A); *see*
*Fin. Insts. Ret. Fund v. Office of Thrift Supervision*, 964 F.2d
142, 148 (2d Cir. 1992).  Either by virtue of its plan
administrator responsibilities or its fiduciary responsibilities,
it has the authority to direct BCBSMA to refuse to provide Plan
data to the Department.

It is undisputed that, as a voluntary reporter, Liberty
Mutual itself may not be compelled to provide data to VHCURES.
BCBSMA however is a mandated reporter, and is subject to section
9410's reporting requirements with respect to Liberty Mutual's
Plan's data along with the data it acquires from other sources.
When a plaintiff's asserted injury arises from the allegedly
unlawful regulation of a third party, the plaintiff must "adduce
facts" showing that the third party will act in such a fashion
"as to produce causation and permit redressability of injury."
*Lujan*, 504 U.S. at 562.

According to the terms of the contract between BCBSMA and
Liberty Mutual, Liberty Mutual agrees to hold BCBSMA harmless for
any financial charges that may result at any time arising from or
in connection with its self-insured ERISA health benefit plan.
Agreement § 2.  Liberty Mutual will therefore be responsible for
any civil penalties assessed against BCBSMA because of BCBSMA's
refusal to comply with the subpoena.  The Department does not
indicate that it will forbear enforcement of the subpoena

directed to BCBSMA, and there is no suggestion that the threat of civil penalties is remote or speculative.

The Department's issuance of a subpoena to BCBSMA leaves two options open to Liberty Mutual.  Liberty Mutual may allow BCBSMA to comply with the subpoena, allegedly in violation of ERISA and Liberty Mutual's fiduciary and administrative responsibilities to the Plan.  Or Liberty Mutual may demand that BCBSMA refuse to comply with the subpoena, in which case it must indemnify BCBSMA if BCBSMA incurs civil penalties for its refusal, or sue BCBSMA if BCBSMA complies with the subpoena.  As long as Liberty Mutual employs a mandated reporter to process its claims, and the Department insists on requiring that mandated reporter to report data obtained from voluntary reporters, Liberty Mutual is subject to regulation through the Department's regulation of BCBSMA.

An injury-in-fact "must be actual or imminent to ensure that the court avoids deciding a purely hypothetical case in which the projected harm may ultimately fail to occur."  *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003).  "'One does not have to await the consummation of threatened injury to obtain preventive relief.  If the injury is certainly impending, that is enough.'" *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923)).  Under the circumstances presented here, Liberty Mutual has adequately alleged injury-in-fact.  *See Davis v. Fed.*

*Election Comm'n*, 554 U.S. 724, 733 (2008) (holding that a candidate for Congressional seat had standing to challenge election law disclosure requirements due to an imminent threat that he would have to make disclosure or face enforcement action).

With respect to the second element of constitutional standing, a causal connection, there can be no serious dispute that the forced reporting of its Plan's data is "fairly traceable to the challenged action" of the Department. *Lujan*, 504 U.S. at 560. The Department argues that BCBSMA would be the cause of any alleged injury to Liberty Mutual should BCBSMA comply with the subpoena, and that Liberty Mutual's injury is therefore caused by the independent action of "a third party not before the court." Mot. to Dismiss 5 (citing *Lujan*, 504 U.S. at 560). The Department fails to acknowledge that BCBSMA would not be inflicting an alleged injury upon Liberty Mutual were it not for the Department's subpoena and threatened enforcement. The Department's actions need not be "the very last step in the chain of causation," *Bennett v. Spear*, 520 U.S. 154, 169 (1997); it will suffice if Liberty Mutual's injury is produced by the Department's "coercive effect upon the action of someone else," *id.*, in this case BCBSMA.

The Department suggests—although it has not briefed the issue—that Liberty Mutual also cannot satisfy the redressability

element of constitutional standing. Mot. to Dismiss 6. On the contrary, a favorable decision from this Court would allow Liberty Mutual to avoid providing its health care data to the Department, exactly the harm of which Liberty Mutual complains. *See Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287 (2008) (reiterating that the redressability inquiry focuses on whether the particular injury alleged is likely to be redressed through the litigation).

Liberty Mutual has adequately alleged constitutional standing.

## II. Preemption

Both parties seek summary judgment on the claim that ERISA preempts section 9410 and its accompanying regulation. Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under Rule 56[(a)] the moving party has the burden of showing the absence of any genuine issue of material fact. A fact is material when its resolution would affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

*Gen. Elec. Co. v. New York State Dep't of Labor*, 936 F.3d 1448, 1452 (2d Cir. 1991) (citations and quotation marks omitted). "Where . . . there are cross-motions for summary judgment, each party's motion must be examined on its own merits, and in each

14

case all reasonable inferences must be drawn against the party whose motion is under consideration." *Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010) (quotation marks and citation omitted).

The parties do not dispute that ERISA regulates Liberty Mutual's Plan. *See N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995) ("ERISA's comprehensive regulation of employee welfare and pension benefit plans extends to those that provide 'medical, surgical, or hospital care or benefits' for plan participants or their beneficiaries 'through the purchase of insurance or otherwise.'") (quoting 29 U.S.C. § 1002(1)); *see also Boggs v. Boggs*, 520 U.S. 833, 839, 841 (1997) ("ERISA is designed to ensure the proper administration of pension and welfare plans . . . . All employee benefit plans must conform to various reporting, disclosure, and fiduciary requirements.").

ERISA Section 514(a) provides that, subject to certain exceptions, the provisions of Title I and Title IV of ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" described in section 4(a) and not exempt under section 4(b) of ERISA. 29 U.S.C. § 1144(a). State law "includes all laws, decisions, rules, regulations or other State action having the effect of law." *Id.* § 1144(c)(1).

15

The Supreme Court originally gave this express preemption provision sweeping scope.  In *Shaw v. Delta Air Lines, Inc.*, the Court stated "[t]he breadth of § 514(a)'s pre-emptive reach is apparent from that section's language."  463 U.S. 85, 96 (1983). It held that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."  *Id.* at 96-97.

By the mid-1990's, however, the Court found ERISA's broad language "opaque," *De Buono v. NYSA-ILA Med. & Clinical Serv. Fund*, 520 U.S. 806, 809 (1997), and "unhelpful," *Travelers*, 514 U.S. at 656, remarking that "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for really, universally, relations stop nowhere."  *Id.* at 655; *accord Calif. Div. of Labor Standards Enforcement v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 335 (1997) (Scalia, J. concurring) ("since . . . everything is related to everything else", suggesting that applying "relate to" literally had failed).

In *Travelers*, the Court placed ERISA preemption on the same footing as its other preemption cases, beginning with the presumption that Congress does not intend to supplant state law, particularly in areas of traditional state regulation.  514 U.S. at 654-55.  Nevertheless, the Court has continued to adhere to *Shaw*'s two-pronged test for determining whether a state law

16

relates to an employee benefit plan:  "A law 'relates to' an employee benefit plan . . . if it has a connection with or reference to such a plan."  *Shaw*, 463 U.S. at 96-97.  Because the meaning of "relate to" is open to interpretation, "sensible construction of ERISA . . . requires [a court to] measure these words in context."  *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 363 (1999).  Thus in this Circuit courts, following *Travelers*, consider that "two kinds of state laws relate to ERISA for purposes of preemption: 'those that mandate employee benefit structures or their administration, and those that provide alternative enforcement mechanisms.'"  *HMI Mech. Sys., Inc. v. McGowan*, 266 F.3d 142, 149 (2d Cir. 2001) (quoting *Burgio & Campofelice, Inc. v. N.Y. State Dep't of Labor*, 107 F.3d 1000, 1008 (2d Cir. 1997)).

### A.    The Presumption Against Preemption

"[T]he regulation of health and safety matters is primarily, and historically, a matter of local concern."  *Hillsborough County, Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 719 (1985); *accord Travelers*, 514 U.S. at 661-62; *see also Florida v. U.S. Dept. of Health & Human Servs.*, 648 F.3d 1235, 1305 (11th Cir. 2011) ("The health care industry . . . falls within the sphere of traditional state regulation."), *aff'd in part, rev'd in part sub nom. Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566 (2012).  Vermont's health care database was established

17

to further the State's policy "to ensure that all residents have access to quality health services at costs that are affordable." Vt. Stat. Ann. tit. 18, § 9401(a).  Among the specific duties that the database is designed to assist with are "comparing costs between various treatment settings and approaches" and "improving the quality and affordability of patient health care and health care coverage."  §§ 9410 (a)(1)(D),(F).

A statute that operates in the health care field will receive the benefit of the presumption against preemption, even if it does not directly regulate health care providers or services.  For example, in 1997 the Supreme Court considered whether a New York statute that imposed a tax on gross receipts for patient services was preempted as applied to medical centers operated by ERISA plans.  *DeBuono*, 520 U.S. at 809.  The Court acknowledged that the law was a revenue-raising measure rather than a regulation of hospitals; nevertheless it applied the presumption against preemption because the statute "clearly operates in a field that has been traditionally occupied by the States."  *Id.* at 814 (internal quotation marks and citation omitted).  The Court distinguished the statute at issue from types of state law that Congress intended ERISA to preempt:  laws that forbid a method of calculating pension benefits, or require the provision of certain benefits; state-law causes of action in which the existence of a pension plan is a critical element; laws

18

that expressly refer to ERISA or ERISA plans.  *Id.* at 814-15.  It observed that "[a]ny state . . . law[] that increases the cost of providing benefits to covered employees will have some effect on the administration of ERISA plans, but that simply cannot mean that every state law with such an effect is pre-empted by the federal statute," *id.* at 816, and held that New York could collect its tax.  *Id.* at 809.

That Congress also regulates in the field of health care or health information technology, *see* HIPAA, Pub. L. No. 104-191, 110 Stat. 1936 (1996), for example, doesn't disturb the presumption against preemption for a state law that operates in the field of health care.  Nevertheless, the presumption against preemption "can be overcome where . . . Congress has made clear its desire for pre-emption." *Egelhoff v. Egelhoff*, 532 U.S. 141, 151 (2001).

**B.  Reference to ERISA Plans**

"Where a State's law acts immediately and exclusively upon ERISA plans, . . . or where the existence of ERISA plans is essential to the law's operation, . . . that 'reference' will result in pre-emption." *Dillingham*, 519 U.S. at 325.  "'State laws which are specifically designed to affect employee benefit plans are preempted.'" *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990) (quoting *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 829 (1988)).

19

Liberty Mutual asserts that the regulation expressly mentions self-funded ERISA plans, and requires such plans to report their data.[3]  That is certainly true.  But "'[t]he Supreme Court has never found a statute to be preempted simply because the word ERISA (or its equivalent) appears in the text.'"  *Romney v. Lin*, 94 F.3d 74, 79 (2d Cir. 1996) (quoting *NYS Health Maint. Org. Conference v. Curiale*, 64 F.3d 794, 800 (2d Cir. 1995)); *accord Hattem v. Schwarzenegger*, 449 F.3d 423, 432 (2d Cir. 2006) ("While singling out ERISA plans for special treatment is considered a 'reference,' simply mentioning the word 'ERISA' is not.").[4]

In *Curiale*, a Second Circuit panel held that a state regulation that established health insurance pools to equalize the risk of high-cost claims or persons did not refer to an ERISA plan.  Even though the regulation "implicate[d]" ERISA plans, its "allusion" to ERISA was "not tantamount to a reference because the regulation [could] be applied without guidance from or

---

[3]  Section 3X includes in its definition of "health insurer," "to the extent permitted under federal law, any administrator of an insured, self-insured, or publicly funded health care benefit plan offered by public and private entities." Reg. H-2008-01, § 3X.  Health insurers, with the exception of voluntary reporters, must submit medical claims data, pharmacy claims data, member eligibility data, provider data, and other information relating to health care . . . ."  *Id.* § 4D, E.

[4]  The contrary is also true of course.  A statute may "refer" to ERISA plans and therefore be preempted without actually using the phrase.  *See Romney*, 94 F.3d at 78 (citing cases).

interference with an ERISA plan." *Id.* at 801.  The calculation
of an insurer's pool contributions or reimbursements was
unaffected by the presence or absence of an ERISA plan in the
pool, because the contributions or reimbursements were based upon
the insurer's membership, not on the benefits provided to the
members.  And the regulation did not require any changes to the
contents of the benefits package.  *Id.*

In a challenge to Maine's Unfair Prescription Drug Practices
Act, a First Circuit panel found no ERISA preemption.  *See Pharm.
Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 299 (1st Cir. 2005),
*cert. denied*, 547 U.S. 1179 (2006).  Relying upon *Dillingham*, and
its own precedents, it emphasized that the existence of ERISA
plans was not essential to the operation of the statute, and that
the statute applies to a broad spectrum of health care
institutions and health benefit providers.  *Id.* at 303.  "'[A]
state law that applies to a wide variety of situations, including
an appreciable number that have no specific linkage to ERISA
plans, constitutes a law of general application for purposes of
29 U.S.C. § 1144.'"  *Id.* at 304 (quoting *Carpenters Local Union
No. 26 v. United States Fid. & Guar. Co.*, 215 F.3d 136, 144-45
(1st Cir. 2000)).

Vermont's statute and regulation do not act immediately and
exclusively upon ERISA plans, nor is the existence of ERISA plans
essential to their operation.  Self-insured plans and their TPAs

21

are only two of several entities that the statute and regulation cover.  The Department affirms that VHCURES data includes information provided by BCBSMA from other self-funded plans, as well as from members not affiliated with an ERISA plan.  *See* Aff. of Dian Kahn ¶¶ 5-6, ECF No. 48-1.  VHCURES also requires data from hospitals, health insurance companies, managed care organizations and pharmacy benefit managers among others.  *See* § 9410(c); Reg. H-2008-01 §3X.

Vermont's statute and regulation, which "'function[] irrespective of . . . the existence of an ERISA plan,'" *Dillingham*, 519 U.S. at 328 (quoting *Ingersoll-Rand Co.*, 498 U.S. at 139), do not make reference to ERISA plans as that term is understood by the United States Supreme Court and the Second Circuit.  *See, e.g.*, *Dillingham*, 519 U.S. at 328; *Hattem*, 449 F.3d at 435.

**C.  Connection with ERISA Plans**

To determine whether a state law has a connection with ERISA plans, the Court "look[s] to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive," *Travelers*, 514 U.S. at 656, "as well as to the nature of the effect of the state law on ERISA plans." *Dillingham*, 519 U.S. at 325.  The Supreme Court "ha[s] cautioned against an uncritical literalism that would make pre-emption turn on infinite connections," *Egelhoff*, 532 U.S. at 147 (internal

22

quotation marks and citation omitted); yet if a statute
"implicates an area of core ERISA concern," it will have an
impermissible connection with ERISA plans.  *Id.*

   In *Gerosa v. Savasta & Co.*, 329 F.3d 317, 324 (2d Cir.
2003), the appeals court surveyed lower court opinions attempting
to apply the Supreme Court's ERISA preemption principles, and
identified "several clear trends."  One, courts' preemption
analyses have focused "on the core ERISA entities:
beneficiaries, participants, administrators, employers, trustees
and other fiduciaries, and the plan itself.  Courts are reluctant
to find that Congress intended to preempt state laws that do not
affect the relationships among these groups."  *Id.*  Two, "state
laws that would tend to control or supersede central ERISA
functions—such as state laws affecting the determination of
eligibility for benefits, amounts of benefits, or means of
securing unpaid benefits—have typically been found to be
preempted."  *Id.*; *accord Stevenson v. Bank of N.Y. Co.*, 609 F.3d
56, 59 (2d Cir. 2010); *see also Pharm. Care Mgmt. Ass'n v. Dist.
of Columbia*, 613 F.3d 179, 184 (D.C. Cir. 2010) ("The
administration of employee benefits clearly is an area of core
ERISA concern, [and o]ne of the principal goals of ERISA is to
enable employers to establish a uniform administrative scheme,
which provides a set of standard procedures to guide processing
of claims and disbursement of benefits.") (internal quotation

marks and citation omitted); *Gen. Elec. Co.*, 891 F.2d at 29 (A
state law has a connection with ERISA plans where it "prescribes
either the type and amount of an employer's contributions to a
plan, the rules and regulations under which the plan operates, or
the nature and amount of the benefits provided thereunder.")
(citations omitted); *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142,
146-47 (2d Cir. 1989) ("What triggers ERISA preemption is not
just any indirect effect on administrative procedures but rather
an effect on the primary administrative functions of benefit
plans, such as determining an employee's eligibility for a
benefit and the amount of that benefit."); *accord Howard v.
Gleason Corp.*, 901 F.2d 1154, 1157 (2d Cir. 1990).

In *Hattem*, the appeals court took a close look at *Travelers*,
noting that "preemption is not called for 'if the state law has
only a tenuous, remote, or peripheral connection with covered
plans, as is the case with many laws of general applicability.'"
449 F.3d at 429 (quoting *Travelers*, 514 U.S. at 661).  An
indirect economic effect on choices that a plan administrator
must make is insufficient; "rather, the law must actually dictate
which choices *must* be made."  *Id.*  A state law's indirect
economic effect may, however, be so "acute" "'as to force an
ERISA plan to adopt a certain scheme,' which might result in
preemption."  *Id.* (quoting *Travelers*, 514 U.S. at 668).

*Hattem* also discussed the Supreme Court's decision in

*Egelhoff*, in which the Court found that a state law did have an impermissible connection with an employee benefit plan.  532 U.S. at 147.  The Washington statute at issue automatically revoked upon divorce an individual's beneficiary designation on any nonprobate asset.  This law "interfered with a nationally uniform plan administration, the creation of which was another goal of ERISA."  449 F.3d at 430 (citing *Egelhoff*, 532 U.S. at 148-50).  Were a similar law adopted in every state, a plan administrator would have to research every state's law each time it needed to pay the beneficiary of a plan participant.  *Id.*

Vermont's statute and regulation does not require any particular health plan or benefit structure, or specific benefits or enforcement mechanism.  It does not alter the procedures by which Liberty Mutual processes claims and disburses benefits.  There is no evidence that the law affects the relationships among core ERISA entities or creates an economic effect so acute as to dictate certain administrative choices.[5]

---

[5] Vermont's law does not in fact require Liberty Mutual to do anything at all.  BCBSMA bears the burden of compliance, if there is one.  There is no evidence that BCBSMA is laboring under any sort of burden.  Although Liberty Mutual has argued with fervor that the reporting obligations are "onerous," "staggering," "extensive and arcane, and a distraction from plan administration," Mem. in Supp. of Mot. for Summ. J. 17, ECF No. 35-1, citing the length and detail of the regulation itself and the Department's reference manual for companies subject to the regulation, it has not submitted any information about any actual burden suffered by itself or BCBSMA in producing this information.  BCBSMA apparently provides the data without protest on behalf of other self-funded plans.  *See* Kahn Aff. ¶¶ 5-6.

Nevertheless, Liberty Mutual stresses the Supreme Court's
commentary that the purpose of ERISA's preemption provision was
"to ensure that plans and plan sponsors would be subject to a
uniform body of benefits law; the goal was to minimize the
administrative and financial burden of complying with conflicting
directives among States or between States and the Federal
Government."  *Ingersoll-Rand*, 498 U.S. at 143; *accord Burgio &
Campofelice, Inc. v. New York State Dep't of Labor*, 107 F.3d
1000, 1007-08 (2d Cir. 1997); *see also Travelers*, 514 U.S. at 657
(describing the objective of ERISA preemption "as being to
'eliminate[e] the threat of conflicting and inconsistent State
and local regulation.'" (quoting Representative John Dent, a
sponsor of the legislation)).  The Supreme Court has generalized
on more than one occasion that Section 514(a) preempts "state
laws dealing with the subject matters covered by ERISA,"
including reporting and disclosure.  *Shaw*, 463 U.S. at 98; *accord
Travelers*, 514 U.S. at 661; *FMC Corp. v. Holliday*, 498 U.S. 52,
58-59 (1990).  Thus, in Liberty Mutual's view ERISA preempts any
state law that imposes a reporting requirement on an ERISA plan,
regardless of the purpose for the data, the type of data
required, or the law's effect if any on core ERISA entities,
their functions or their relationships.  Liberty Mutual draws
support for this position from ERISA's legislative history and

the fate of Hawaii's Prepaid Health Care Act, passed in 1974.[6]

Upon examining ERISA's legislative history, the Supreme Court stated that the scope of ERISA's preemption provision is "as broad as its language." *Shaw*, 463 U.S. at 98; *accord FMC Corp.*, 498 U.S. at 59.  Yet it also warned against an "uncritical literalism," *Egelhoff*, 532 U.S. at 147, and stressed that parties' contentions about the scope of ERISA preemption must be viewed in context.  *See Boggs v. Boggs*, 520 U.S. at 845.  Thus the Court has consistently emphasized that "the principal object of the statute is to protect plan participants and beneficiaries."  *Id.; see also Dillingham*, 519 U.S. at 326-27 ("'In enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds. *To that end*, it established extensive reporting, disclosure, and fiduciary duty requirements to insure against the possibility that the employee's expectation of the benefit would be defeated

---

[6]  Also in 1974, the year ERISA was enacted with its express preemption clause, Congress enacted the National Health Planning and Resources Development Act of 1974 ("NHPRDA"), Pub. L. No. 93-641, 88 Stat. 2225.  Among other things, this law required states to create health planning agencies which would, among other things, be responsible for the gathering and analysis of data relevant to the costs of medical services.  *See Travelers*, 514 U.S. at 665.  Following Liberty Mutual's reasoning that any reporting requirement that affects an ERISA plan is preempted, Congress would have precluded the states' gathering of cost information from ERISA plans even as Congress was authorizing such activity with the NHPRDA.

through poor management by the plan administrator.'") (quoting
*Massachusetts v. Morash*, 490 U.S. 107, 115 (1989) (emphasis
supplied)); *Travelers*, 514 U.S. at 651 (ERISA "protect[s] plan
participants and their beneficiaries by . . . control[ling] the
administration of benefit plans . . . as by imposing reporting
and disclosure mandates . . . .").

If "[t]he focus of [ERISA] . . . is on the administrative
integrity of benefit plans," *Fort Halifax Packing Co. v. Coyne*,
482 U.S. 1, 15 (1987), it is to assure uniformity of regulation
with respect to the *activities* and *operations* of such plans.  *Id.*
at 15-16 (citing and quoting from the legislative history).  The
appropriate question therefore is not the uncritically literal
one of whether Vermont's health care database law imposes a
reporting requirement on the TPA of an ERISA plan.  It is rather
a more contextual one:  whether a state data reporting
requirement dictates or disrupts the activities or operations of
an ERISA plan, or compromises the administrative integrity of an
ERISA plan, or in some way creates state oversight of the
administration of an ERISA plan.

For example, the case cited by Liberty Mutual as a paradigm
of ERISA preemption was a challenge to Hawaii's Prepaid Health
Care Act.  The Act included reporting and disclosure requirements
along with its imperative to private employers to establish
health care benefit plans.  In *Standard Oil Co. of California v.*

28

*Agsalud*, 633 F.2d 760, 763 (9th Cir. 1980), the Ninth Circuit
struck down the statute.  Its reporting, disclosure and fiduciary
requirements fell, without discussion, along with the benefits
requirement.  *Id.* at 765-66, *aff'd mem.*, 454 U.S. 801 (1981).[7]

The Hawaii statute was preempted because it required the
establishment of ERISA plans or dictated the terms of existing
plans, and gave the state oversight over ERISA plans' operations.
*See Golden Gate Restaurant Ass'n v. City & County of San
Francisco*, 546 F.3d 639, 655 (9th Cir. 2008) (describing *Agsalud*
as holding that "the Hawaii statute was preempted because it
required employers to have health plans, and it dictated the
specific benefits employers were to provide through those
plans"), *cert. denied*, 130 S. Ct. 3497 (2010); *see also Fort
Halifax*, 482 U.S. at 12-13 (describing the Hawaii statute as
preempted because it required the establishment of a health care
plan or required existing plans to pay certain benefits).

Vermont's statute and regulation, which have nothing to do
with mandating employee benefit plans or benefits and do not
attempt any sort of oversight over compliance, bear no
resemblance to Hawaii's Prepaid Health Care Act, and "create[] no

---

[7]  In 1983 Congress amended ERISA to specifically exempt
from preemption certain provisions of the Hawaii statute that
predated ERISA.  *See* 29 U.S.C. § 1144(b)(5).  The exempted
provisions did not include the reporting or disclosure
requirements, which remained preempted by the *Agsalud* ruling.
*See Fort Halifax*, 482 U.S. at 13 n.7.

impediment to an employer's adoption of a uniform benefit administration scheme." *Id.* at 14 (holding that a Maine statute requiring a one-time severance payment to employees in the event of a plant closing was not preempted because it did not mandate a benefit plan or require the establishment of a scheme to administer benefits, or change or alter its ability to operate its plan).

The Second Circuit Court of Appeals' opinion in *HMI Mechanical Systems* further illustrates the distinction between a state law that requires ERISA plans to provide specific benefits or follow certain eligibility criteria and a state law that seeks information held by plans. New York law requires businesses who perform public work projects to pay their employees the locally prevailing wage amount, which encompasses not only cash wages but non-cash benefits such as health, retirement and disability benefits. A business may comply with the law by contributing to an ERISA plan on behalf of its employees. HMI, as a business subject to the law, refused to comply with the state's demands for information about HMI's contributions to its ERISA plans. It sought a declaration that ERISA preempted the state's investigation into its allocation of benefits, contending that the state sought to regulate the administration of an ERISA plan. The district and appeals courts disagreed, concluding that the state was not mandating a particular benefit structure or

requiring particular contributions.  266 F.3d at 151.  It held only that the state could not delve into the internal allocations of benefits within the plan.  *Id.* at 151-52.

The Department's efforts to enforce its health care database statute and regulation do not seek to regulate the administration of Liberty Mutual's Plan, or its allocation of benefits. Providing the information requested may create some degree of administrative burden for the TPA and by extension Liberty Mutual; such an effect, peripheral to the core ERISA functions and relationships, does not warrant preemption.

## Conclusion

Section 9410 and its accompanying regulation is a law of general applicability concerning an area of traditional state police power.  The law applies to a broad range of entities, including health care providers, health care facilities and health insurers.  § 9410(c).  It is not directed at any particular plans, or types of plans, or employee benefit plans in general.  The State's intention is to improve the administration of health care services, and it has determined that it is in need of better health care data to ensure the delivery of quality health services at an affordable cost.  Plans such as Liberty Mutual's have data that can assist the achievement of that goal. Compliance with the reporting requirements of H-2008-1 may have some indirect effect on health benefit plans, but that effect is

so peripheral that the regulation cannot be considered an attempt to interfere with the administration or structure of a welfare benefit plan. *See De Buono*, 520 U.S. at 815-16 (concluding that a state statute that imposes some administrative burden on an ERISA plan is not automatically preempted).

"[I]n the field of health care, a subject of traditional state regulation, there is no ERISA preemption without clear manifestation of congressional purpose." *Pegram v. Herdrich*, 530 U.S. 211, 237 (2000). Liberty Mutual has not overcome the presumption against preemption. The law does not make reference to ERISA plans, as that term has been construed in the case law, and makes no attempt to control, supersede or interfere with the operation of an ERISA plan. In short, because the law's reporting requirement has no effect whatsoever on the core relationships that ERISA was designed to protect—those between participants, beneficiaries, administrators and employers—and no effect whatsoever on the core ERISA functions—such as processing claims or disbursing benefits—"it poses no danger of undermining the uniformity of the administration of benefits that is ERISA's key concern." *Stevenson*, 609 F.3d at 61. "[P]reemption of [Vermont's] law would not serve the purpose for which ERISA's preemption provision was enacted." *Fort Halifax*, 482 U.S. at 14-15. Liberty Mutual's motion for summary judgment is therefore **denied**. The Department's motion to dismiss is **denied** with

respect to standing and **granted** with respect to preemption.

     **CASE CLOSED.**

     Dated at Burlington, in the District of Vermont, this 9th day of November, 2012.

                 /s/ William K. Sessions III
                 William K. Sessions III
                 District Court Judge